In the Matter of LLOYD B. WEINSTEIN, Appellant, v. PLANNING BOARD OF THE VILLAGE OF GREAT NECK, Respondent.

 No opinion. Beldock, P. J., Ughetta, Rabin and Munder, JJ., concur; Benjamin, J., dissents and votes to reverse the judgment, to annul the determination of the Planning Board, and to direct it to approve the proposed subdivision plat, with the following memorandum: Plaintiff is the owner of a parcel of land in the Residence " C " zone of the Village of Great Neck. His parcel contains 28,348 square feet of land, and it fronts on two curved, cul-de-sac, public streets known as Reed Court and Birchwood Lane. The Village Planning Board has disapproved his proposed subdivision plat, which divided his parcel into four lots, which for convenience I shall call Lots 1, 2, 3 and 4. [Because of the unusual situation here presented, which is difficult to describe in words, I am incorporating the following sketch showing the proposed subdivision plat submitted by plaintiff to the Planning Board.]

In the Residence "C" zone, the minimum lot size is 5,000 square feet; the minimum "street frontage" is 50 feet; the minimum front yard width is 50 feet, and its depth must be at least 20 feet; and "front yard" is defined as a "yard across the full width of the lot extending from the front line of the building to the front line of the lot." An examination of the foregoing sketch shows that Lots 1 and 2, fronting on the curve of the cul-de-sac of Birchwood Lane, each have 50 feet of street frontage when measured on the arc (and defendants concede that in this respect they comply with the ordinance); that when measured on a straight line, the front yards of each of them are less than 50 feet wide for a depth of about 50 feet, but are about 55 feet wide at a point about 65 feet back from the street, where plaintiff intends to locate the houses he contemplates building; and that these lots have areas of 8,758 and 9,290 square feet, respectively. Lot 3, fronting on Reed Court, has a street frontage of 56 feet and an area of 5,050 square feet. Lot 4, fronting on the curve of the cul-de-sac of Reed Court, has an area of 5,250 square feet; its front line is 62.2 feet wide, but because the cul-de-sac curves away from its front line, the "street frontage" is only 26.4 feet, with the remaining 35.8 feet of the front line abutting on a narrow, triangular wedge of the adjoining lot. The Planning Board disapproved this subdivision plat on the ground that Lot 4 had a street frontage of less than the 50 foot minimum, and Lots 1 and 2 had front yards narrower than the 50 foot minimum. In my opinion, this determination was incorrect and was based upon a hypertechnical and impractical construction of the zoning ordinance. The original developer who laid out these cul-de-sacs, with the approval of the Planning Board, obviously did so with the intention of enhancing the beauty, variety and convenience of the entire development. The zoning ordinance should be construed liberally and pragmatically so as to carry out that intent. So construed, each of these 4 lots complies with the ordinance. Each has more than the required 5,000 square feet of area — the smallest (the only one conceded by the Planning Board to be legal) having 5,050 square feet, and two of the allegedly illegal ones having 8,758 and 9,290 square feet respectively (almost twice the required minimum). Two of them (Lots 3 and 4) are over 50 feet wide for all of their depth; Lot 1 is over 50 feet wide for about three-fourths of its depth; Lot 2 is over 50 feet wide for about half of its depth (and Lots 1 and 2 are the ones with almost twice for required area); and on Lots 1 and 2, plaintiff intended to locate his houses at least 20 feet behind the point where those lots had widened out to 50 foot widths, so there would be "front yards" 50 feet wide and at least 20 feet deep. None of these lots are gerrymandered monstrosities, and all are normal in shape. If houses are placed on them, all would look like normal homesites in that zone, except that Lots 1 and 2 would probably look better than average because they are much larger than average. And each lot has ample "street frontage" for safety and convenient access for cars, as the smallest "street frontage" (on Lot 4) is about 26½ feet. The tight, hypertechnical construction of the ordinance adopted by the Planning Board (and accepted by Special Term and the majority in this court) would leave plaintiff with only two usable building lots on his 28,348 square foot parcel. Each of them would be very much larger than the required 5,000 square feet (one being about 18,000 square feet, the other about 10,300 square feet), and plaintiff thus would have grossly excessive land costs for each of the two houses he could build on his parcel in this one-eighth acre zone. If we were to assume, *arguendo,* that Lots 1, 2 and 4 do not meet the technical requirements of the zoning ordinance, we then would have a situation where plaintiff would seem to be entitled to a variance from those requirements on the ground of practical difficulties. It is conceded that such variance would be an area variance, and

that in such case only practical difficulties (not special hardship) need be shown. And it is not disputed that the Planning Board has power to grant such variance under a resolution duly adopted by the Village Board of Trustees. The self-imposed hardship rule does not apply in an area variance case (*Siegel* v. *Lassiter*, 6 A D 2d 879, mot. for lv. to app. den. 5 N Y 2d 709; *Matter of Hoffman* v. *Harris*, 17 N Y 2d 138). Nor would it apply merely because the area variance is sought for practical difficulties rather than special hardship. At bar, there appears to be sufficient showing of practical difficulties if the ordinance were construed as the Planning Board construed it, since plaintiff would then have to build two medium-priced homes on grossly-oversized and excessively-costly lots, as hereniabove pointed out. And if he were to build on these oversize lots houses priced high enough to be compatible with his excessive land costs, they would be unsalable in this area zoned for medium priced homes on 50 by 100 lots. For all these reasons, I believe we should reverse the judgment, annul the determination of the Planning Board, and direct it to approve the proposed subdivision plat.